UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEW MEXICO

In re:

HOWARD G. BAKER and
FANNIE M. BAKER,

      Debtors.

No. 09-12997 t13

HOWARD G. BAKER and
FANNIE M. BAKER,

      Plaintiffs,

v.

Adv. No. 11-1131

THE BANK OF NEW YORK
MELLON AS TRUSTEE, and
VANDERBILT MORTGAGE AND
FINANCE, INC.,

      Defendants.

## MEMORANDUM OPINION

In this adversary proceeding, Plaintiffs claim that Defendants wrongfully attempted to foreclose on their house. After taking evidence and hearing arguments of counsel during a three day trial, the Court concludes that Plaintiff's claims are no longer viable because of their failure to defend the foreclosure action, schedule their claims against Defendants in their first bankruptcy case, and pursue the claims within the applicable limitations period. The Court sympathizes with Plaintiffs. However, under the circumstances of their case the Court cannot grant any relief. The Court therefore will enter judgment in Defendants' favour on all counts.[1]

---

[1] This is a core proceeding under 28 U.S.C. § 157(b)(2)(C), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes the Court's Findings of Fact and Conclusions of Law in accordance with Fed.R.Civ.P. 52, made applicable to this proceeding by Bankruptcy Rule 7052.

## I. FACTS

The Court finds the following facts:[2]

1. Plaintiffs executed a promissory note ("Note") and a mortgage encumbering their house ("Mortgage") on or about October 27, 1997, in favour of Oakwood Acceptance Corporation ("Oakwood").

2. The Mortgage contains the following language:

Borrower and Lender further covenant and agree as follows:

**Acceleration; Remedies**. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property

(the "Required Cure Notice").

3. Oakwood assigned the Mortgage to PNC Bank on February 1, 1998. PNC Bank assigned the Mortgage to Chase Manhattan Trust Company ("Chase") on or about January 24, 2004.

4. Oakwood transferred servicing of the loan to defendant Vanderbilt Mortgage and Finance, Inc. ("VMF") on April 13, 2004.

5. Sometime thereafter, Bank of New York Mellon ("BNYM") became the holder of

---

[2] In making these findings, the Court took judicial notice of the docket. *See In re Mailman Steam Carpet Cleaning Corp.,* 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade,* 496 B.R. 520, 523 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] … to take judicial notice of its own docket").

the Note and the owner of the Mortgage.[3]  VMF is BNYM's servicing agent for the Note and Mortgage.

6. VMF -- as servicer -- took all the actions at issue in this adversary proceeding. BNYM was a passive owner of the loan.

7. Plaintiffs' loan payments were somewhat sporadic. Plaintiffs sometimes fell a month or two behind, and on one occasion obtained a two-month payment moratorium.

8. VMF kept collection notes documenting its efforts to collect loan payments from Plaintiffs ("Collection Notes").

9. In or around June, 2004, one of VMF's collection agents had a misunderstanding with Plaintiffs, which occurred during a telephone call.  Plaintiffs were in a truck on a freeway in California.  Mr. Baker was driving the truck; he drove a truck part time to earn extra income. Mrs. Baker was with him, in the passenger seat.  Mrs. Baker spoke to the collection agent on her cell phone while Mr. Baker drove.  During the conversation, the agent thought Mrs. Baker called him a bad name, when in fact Mrs. Baker had referred to a driver in another vehicle who had just cut them off.

10. It appears that, as a result of the misunderstanding and resulting antagonism, the collection agent was able to get VMF to declare Plaintiffs' loan in default and refuse further payments.

11. Plaintiffs wrote a check to VMF dated May 24, 2004 in the amount of $720. VMF received the check on or about June 3, 2004, but because of the decision to declare the loan in default, VMF refused to accept it.

12. Plaintiffs sent another check to VMF dated June 17, 2004, in the amount of

---

[3] Although it is unclear how BNYM took title to the Note and Mortgage, it likely occurred through merger with Chase.  References to BNYM include Chase as appropriate.

$2,158.25. VMF received the check on June 21, 2004 but for the same reason refused to accept it.

13. VMF did not give Plaintiffs the Required Cure Notice before refusing the loan payments and accelerating the loan.

14. Plaintiffs retained counsel in May, 2004. Counsel sent letters to VMF on May 13 and June 16, 2004, asserting *inter alia* that VMF had failed to give notice of default and an opportunity to cure, wrongfully declared a default, and wrongfully accelerated the loan balance.

15. VMF retained New Mexico foreclosure counsel, who filed a foreclosure complaint on August 18, 2004 in New Mexico's Third Judicial District Court, commencing *JPMorgan Chase Bank, as Trustee, v. Howard G. Baker and Fannie M. Baker,* CV 2004-1028 (the "Foreclosure Action"). VMF was not a party.

16. Plaintiffs filed a *pro se* "Response to Foreclosure" on October 1, 2004. Plaintiffs did not assert any counterclaims.

17. BNYM filed a motion for summary judgment on February 28, 2005 (the "MSJ"). The MSJ contained the following errors:

    a. Plaintiffs' address was wrong;
    b. The letter attached as <u>Exhibit A</u> - described as "a letter dated April 13, 2004 from Oakwood Homes to Defendants, notifying them that the servicing of the mortgage was transferred from Oakwood Acceptance Corporation to Vanderbilt Mortgage and Finance, Inc." - was not in fact a copy of the letter sent to Plaintiffs, but a "dummy" letter printed by VMF when it decided to foreclose;
    c. BNYM represented that it made demand on Plaintiffs to cure their defaults under the Note and Mortgage. No written demand/notice of cure period was made;
    d. BNYM represented that VMF never received Plaintiffs' $2,168 check. In fact, Plaintiffs sent the check, but VMF refused to accept it;
    e. BNYM represented that VMF obtained Plaintiffs' consent to the two "JIT" withdrawals from Plaintiffs' bank account. In fact, Plaintiffs either authorized no JIT transfers, or only one;
    f. BNYM stated that the payments sent by the Plaintiffs to VMF in June, 2004 were insufficient to reinstate the account. That appears to be untrue. Also, it was

misleading because it implied that BNYM had validly accelerated the debt, and/or validly declared a default; and

       g.     BNYM represented that VMF never received letters demanding that VMF not call the Plaintiffs as work. That is not true.

18. Plaintiffs retained new counsel when the MSJ was filed and provided her a copy of it.

19. Although Plaintiffs thought their new counsel was going to defend the Foreclosure Action, she never entered her appearance, responded to the MSJ, or attended the summary judgment hearing.

20. The state court entered a judgment in favour of BNYM (the "Foreclosure Judgment") on March 7, 2005. The judgment was entered before Plaintiffs' deadline to respond to the MSJ expired.

21. The state court held a hearing on the MSJ on March 16, 2004, and determined to let the Foreclosure Judgment stand. Neither Plaintiffs nor their counsel appeared.

22. The appointed special master scheduled a foreclosure sale for April 9, 2005.

23. On April 4, 2005, Plaintiffs filed the first of three bankruptcy cases, a chapter 7 case (no. 05-12627) (the "Chapter 7 Case").[4]

24. Plaintiffs did not list any claims against Defendants in their bankruptcy schedules.

25. The Chapter 7 Case was closed and the discharge entered on August 1, 2005.

26. The special master rescheduled the foreclosure sale for August 23, 2005.

27. Plaintiffs filed a chapter 13 case on August 22, 2005 (case no. 05-16720) (the "First Chapter 13 Case").

28. Plaintiffs did not make their Chapter 13 plan payments as agreed, and on August 20, 2008 the First Chapter 13 Case was dismissed. The case was reopened on December 31,

---

[4] It appears that the Chapter 7 Case was filed primarily to delay the special master's sale.

2008, but was again dismissed on February 10, 2009.

29. On May 19, 2009, Plaintiffs, through new counsel (their fifth), filed a motion in the Foreclosure Action to set aside the Foreclosure Judgment under Rule 60(b), arguing excusable neglect (Rule 60(b)(1)) and the "catch-all" ground (Rule 60(B)(6)).

30. The state court held a hearing on the motion on June 24, 2009. On July 9, 2009, the state court entered an order denying the motion.

31. The special master thereupon rescheduled the foreclosure sale.

32. Plaintiffs filed this case on July 10, 2009, represented by their sixth attorney.

33. Plaintiffs listed possible claims against Defendants in their bankruptcy schedules.

34. VMF filed a proof of claim in the case on BNYM's behalf on July 27, 2009, for $82,100.79.

35. Plaintiffs objected to the claim on January 10, 2010.

36. The Collection Notes indicate that in or about April, 2011, Defendants discovered that VMF never sent the Required Cure Notice before accelerating the amounts due, refusing tendered payments, and filing the Foreclosure Action.

37. VMF amended the claim on March 2, 2010, reducing the claim amount to $80,721.04, and amended it again on June 10, 2010, reducing the amount to $63,956.26.

38. On June 20, 2011, Plaintiffs withdrew their objection to the claim. The withdrawal was signed by both Plaintiffs' counsel and Defendants' counsel, and states in part:

> Further claims that Debtors may have against Vanderbilt will be brought in an adversary proceeding to be filed within thirty (30) days of filing of this document.

39. On June 16, 2011, Defendants' counsel sent an e-mail to Plaintiffs' counsel stating:

-6-

> I approve of this Withdrawal. Also, please note that I will be on vacation from July 18 through August 5 and will have limited email access. So if you are going to file an Adversary please wait close to the 60 days. I would appreciate it.

40. Plaintiffs commenced this adversary proceeding on August 16, 2011, asserting claims for breach of contract (including breach of the implied covenant of good faith and fair dealing); the intentional infliction of emotional distress (the "IIED claim"); and violation of New Mexico's Unfair Trade Practices Act, NMSA § 57-12-1 et seq. (the "UTPA claim").

41. Claims related to VMF's failure to give the Required Cure Notice and refusal to accept payments arose no later than August 18, 2004, when the Foreclosure Action was filed.

## II. DISCUSSION

A. Standing.

The Court has an independent duty to confirm its subject matter jurisdiction. *In re Hook,* 391 B.R. 211 (10th Cir. BAP 2008), citing *1mage Software, Inc. v. Reynolds and Reynolds Co.,* 459 F.3d 1044 (10th Cir. 2006); *Campanella v. Commerce Exch. Bank,* 137 F.3d 885 (6th Cir. 1998). At trial, the Court gave Plaintiffs the opportunity to show they had standing to assert the claims, given that Plaintiffs failed to schedule the claims in their Chapter 7 Case. Plaintiffs were not able to do so.

Claims, whether scheduled or not, become property of the estate when a debtor files a chapter 7 bankruptcy case. 11 U.S.C. § 541(a)(1). When the bankruptcy case is closed, "any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." 11 U.S.C. § 554(c). On the other hand, unscheduled assets are not abandoned, and remain estate property after a case is closed. *See Vreugdenhill v. Navistar Int'l Trans. Corp.,* 950

F.2d 524, 526 (8th Cir.1991); *Clementson v. Countrywide Financial Corp.,* 2011 WL 1884715, at *5 (D. Colo. 2011), aff'd, 464 Fed. Appx. 706 (10th Cir. 2012) (assets not properly disclosed remain property of the bankruptcy estate); *Rosenshein v. Kleban,* 918 F. Supp. 98, 103 (S.D.N.Y. 1996); *In re Drexel Burnham Lambert Group, Inc.,* 160 B.R. 508, 514 (S.D.N.Y. 1993). Because unscheduled claims remain property of the bankruptcy estate, a debtor lacks standing to pursue the claims after emerging from bankruptcy. *Colorado Environmental Coalition v. Wenker,* 353 F.3d 1221, 1227 (10th Cir. 2004); *Protocols, LLC v. Leavitt,* 549 F.3d 1294, 1298 (10th Cir. 2008); *Clementson,* 2011 WL 1884715, at *5; *Rosenshein*, 918 F. Supp. 103.

The doctrine of judicial estoppel is an alternative theory that prevents Plaintiffs from pursuing claims that were not scheduled in the Chapter 7 Case, thus depriving them of standing. *See, e.g., Eastman v. Union Pacific R. Co.,* 493 F.3d 1151, 1157-59 (10th Cir. 2007) (debtor who did not list claim in his bankruptcy schedules judicially estopped from pursuing the claim); *Cannon-Stokes v. Potter,* 453 F.3d 446, 448 (7th Cir. 2006) (same); *Jethroe v. Omnova Solutions, Inc.,* 412 F.3d 598 (5th Cir. 2005); *Barger v. City of Cartersville,* 348 F.3d 598 (5th Cir. 2005). *See also Queen v. TA Operating, LLC,* 2013 WL 4419322 (10th Cir. 2013) (citing and following *Eastman*).

Under either theory the Court finds that, to the extent Plaintiffs owned any viable claims when they filed the Chapter 7 Case, Plaintiffs lost ownership of the claims by not scheduling them. All such claims remain property of the Chapter 7 estate.

During the trial, Plaintiffs' counsel represented to the Court that he recently spoke to the former trustee in the Chapter 7 Case, and that the trustee had agreed to allow Plaintiffs to proceed. This does not change the result. The former trustee is no longer the trustee; he was discharged when the Chapter 7 case was closed in 2005 and therefore had no authority to speak

on behalf of the estate. Further, even if the Chapter 7 Case had been reopened and the trustee reappointed, Plaintiffs would have had to file amended schedules listing the claims, and the trustee would have had to obtain court approval to abandon or compromise the claims, after giving creditors an opportunity to object. There is no evidence that any of these steps were taken.

B. Statute of Limitations.

Defendants also argued that Plaintiffs' claims are barred by the applicable statutes of limitation. The following claims asserted by Plaintiffs have the following limitations periods:

| Claim | Limitations Period | Source |
|---|---|---|
| | | |
| Breach of Contract | Six years | N.M.S.A. § 37-1-1(A) |
| UTPA | Four years | N.M.S.A. § 37-1-4 |
| IIED | Three years | N.M.S.A. § 37-1-8.[5] |

To the extent Plaintiffs' claims are based on VMF's actions taken before the Foreclosure Action was filed, the statute of limitations expired on or about August 18, 2007 (the IIED claim); August 18, 2008 (the UTPA claim); or August 18, 2010 (the breach of contract claim).

Plaintiffs argue that the limitations period was extended by 11 U.S.C. § 108(a),[6] so some claims survived.[7] There are two problems with this argument. First, as discussed above, Plaintiffs did not own the claims when they filed this case. Section 108(a) cannot extend the limitation periods for claims a debtor does not own. Second, even if the limitations period had been extended until two years after the order for relief, it would have expired July 10, 2011. Plaintiffs' complaint was filed August 16, 2011, 35 days after the extended deadline.

---

[5] *See also Williams v. Stewart*, 137 N.M. 420, 424, 112 P.3d 281, 285 (Ct. App. 2005).
[6] 11 U.S.C. § 108(a) provides that if a statute of limitations has not expired when a case is filed, the debtor or trustee (as the case may be) is given the longer of two years from the petition date, or the normal expiration date, to file the claim.
[7] Section 108(a) could not have saved the UTPA and IIED claims, which expired before June 16, 2009.

-9-

The claim objection withdrawal (signed by Defendants' counsel) states that Plaintiffs' claims against VMF[8] would be filed within 30 days of the withdrawal filing date. To the extent this language further extended the deadline, the extended deadline of July 20, 2011 was not met either.

Finally, Plaintiffs point to a June 16, 2011 e-mail from Defendants' counsel, which states: "if you are going to file an Adversary please wait close to the 60 days. I would appreciate it." It is not clear what Defendants' counsel meant by "the 60 days." Did she really mean to say "the 30 days?" Did she intend to extend the limitations period for 60 days after June 16? It is difficult to find that an informal, vague e-mail message constituted an extension of the statute of limitations. In any event, the extended period would have ended August 15, 2011 (a Monday). Plaintiff filed their complaint the next day.

All in all, even assuming Plaintiffs owned the breach of contract claims on the petition date, such that § 108(a) granted an extension of two years from the order for relief, and even giving Plaintiffs the benefit of every reasonable doubt, the Court must find that the Complaint was not filed within the limitations period for contract claims, so the contract claims against BNYM are time-barred.

C. *Rooker-Feldman*. Another hurdle Plaintiffs face is the *Rooker-Feldman* doctrine. As the Tenth Circuit explained in *In re Staker,* 2013 WL 2233908, at *2 (10th Cir. 2013), the *Rooker-Feldman* doctrine prohibits "state-court losers" from asserting claims in federal court "complaining of injuries caused by state court judgments rendered before [federal] district court proceedings commenced and inviting district court review and rejection of those judgments." 2013 WL 2233908, at *2. *See also Kenmen Engineering v. City of Union,* 314 F.3d 468, 473

---

[8] Plaintiffs do not have contract claims against VMF. It is unclear why there was no mention of WNYM.

-10-

(10th Cir. 2002) (*Rooker-Feldman* doctrine "prohibits a lower federal court from considering [both] claims actually decided by a state court and claims 'inextricably intertwined' with a prior state-court judgment").

Here, Plaintiffs lost in state court in 2005, sought to have the Foreclosure Judgment set aside in 2009, and lost again. The Plaintiffs now ask this Court to grant them money damages because Defendants improperly foreclosed. To the extent such claims are not barred by *res judicata* and/or Rule 13 principles, they are precluded by the *Rooker-Feldman* doctrine.

Some courts have held that the *Rooker-Feldman* doctrine permits parties to argue that a state court judgment was obtained through fraud. *See, e.g., Drake v. St. Paul Travelers Ins. Co.,* 2009 WL 4035470, at *3 (5th Cir. 2009). The Tenth Circuit disagrees. In *West v. Evergreen Highlands Ass'n,* 2007 WL 96450, at *3 (10th Cir. 2007), the court explained:

> This circuit has not held that *Rooker-Feldman* may be circumvented by a collateral attack of the sort suggested in the cases discussed above. There is good reason to balk at such a step. State rules of procedure provide various means to attack a wrongfully obtained judgment. *See In re the Marriage of Gance,* 36 P.3d 114, 116-18 (Colo.App.2001) (discussing motion for relief from judgment based on misconduct of party, equitable action for relief from judgment based on fraud, and claim of "fraud upon the court"). Construing *Rooker-Feldman* to permit federal reconsideration and nullification of state judgments on grounds that could have been pursued in state court arguably allows under the rubric of collateral attack just another mechanism for lower federal court review unauthorized under § 1257.

*See also Tal v. Hogan,* 453 F.3d 1244, 1256 (10th Cir. 2006), cert. denied, 549 U.S. 1209 (2007) (refusing to entertain plaintiff's claims that state court judgment was obtained through fraud and noting that while "new allegation of fraud might create grounds for appeal, but that appeal should be brought in state courts"). Thus, even if the Foreclosure Judgment were obtained by fraud (and the Court does not make a finding on this issue), the *Rooker-Feldman* doctrine in the Tenth Circuit would prevent this Court from altering or ignoring the judgment.

-11-

Further, the *Rooker-Feldman* doctrine prevents Plaintiffs from pursuing their claims against VMF. Such claims clearly attack the Foreclosure Judgment as improperly entered, and are "inextricably intertwined" with the judgment. The Court cannot grant Plaintiffs relief against VMF without "reviewing and rejecting" the Foreclosure Judgment.

D.  Res Judicata.

Defendants argue that Plaintiffs' claims are barred by the doctrines of claim and/or issue preclusion.

1.  Claim Preclusion/Rule 13(a). Claim preclusion bars litigation of claims that were or could have been advanced in an earlier proceeding. *Strickland v City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir. 1997) (citing *State ex rel Martinez v Kerr-McGee Corp.*, 120 N.M. 118, 898 P.2d 1256, 1259 (Ct. App. 1995)).

"Federal courts give the same preclusive effect to state court judgments that those judgments would be given in the state court from which they emerged." *Strickland,* 130 F.3d at 1411 (citing *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 (1982)). Under New Mexico law, claim preclusion requires four elements: "(1) the same party or parties in privity; (2) the identity of capacity or character of persons for or against whom the claim is made; (3) the same subject matter; and (4) the same cause of action in both suits." *Strickland, 130 F.3d at 1411,* citing *Myers v. Olson,* 100 N.M. 745, 676 P.2d 822, 824 (1984). Claim preclusion also bars consideration in a subsequent suit of all matters that "could properly have been raised in the prior case." *Blea v Sandoval*, 107 N.M. 554, 557, 761 P.2d 432, 435 (Ct. App. 1988); *In re: Mucci*, 488 B.R. 186, 199 (Bankr. D.N.M. 2013) (citing *Blea*). With regard to a defendant's claims, the "could have been raised" language refers to compulsory counterclaims. *See, e.g., King v. Deutsche Bank Nat. Trust Co.,* 2013 WL 3871067, at *3 (Tex. App. 2013) (res judicata

only bars relitigation of counterclaims only if they were compulsory); *Fason v. Trussell Enterprises, Inc.*, 2013 WL 4516674, at *3 (Miss. App. 2013) (same); *Wickenhauser v. Lehtinen,* 302 Wis. 2d 41, 60, 734 N.W.2d 855, 865 (2007) (same); *67-25 Dartmouth Street Corp. v. Syllman,* 29 A.D.3d 888, 890, 817 N.Y.S.2d 299, 301 (2006) (same).

The treatment of omitted compulsory counterclaims is also dealt with by New Mexico Rule 1-013(A). Rule 1-013(A) bars a defendant from pursuing claims that were compulsory counterclaims in prior litigation but were not asserted. *Slide–A–Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces,* 105 N.M. 433, 733 P.2d 1316 (1987) (since counterclaims were compulsory in the first action, they could not be raised in a later action); *Romero v. Onewest Bank, FSB,* 2013 WL 5309570 (N.M. App. 2013) (unpublished) (same, citing *Slide-A-Ride*); *Adams v. Key,* 145 N.M. 52, 193 P.3d 599 (Ct. App. 2008) (same). The rule is the same under the Federal Rules of Civil Procedure. *See Avemco Ins. Co. v. Cessna Aircraft Co.,* 11 F.3d 998, 1000 (10th Cir. 1993), citing *Baker v. Gold Seal Liquors,* 417 U.S. 467, 469 (1974) (if a compulsory counterclaim is not brought, the claim is later barred). The basis for barring the claims has been variously characterized as res judicata, waiver, estoppel, or "a bar created by rule." *See* Wright, Miller & Kane, Federal Practice and Procedure, § 1417. *See also Transamerica Occidental Life Ins. Co., v. Aviation Office of America, Inc.,* 292 F.3d 384, 391 (3d Cir. 2002) (discussing the "close connection" between Rule 13(a) and the doctrine of claim preclusion); *Publicis Comm. v. True North Communications Inc.,* 132 F.3d 363, 365 (7th Cir. 1997) (definition of compulsory counterclaim mirrors the condition that triggers a defense of claim preclusion).

The facts in *Romero* are similar to the facts in this adversary proceeding. In *Romero*, a lender brought a foreclosure action and obtained a default judgment. Two years later, the

-13-

borrowers filed an action against the lender, alleging fraud and deceit, negligent misrepresentation, unfair trade practices, and intentional infliction of emotional distress. The lender moved to dismiss, arguing that the claims were barred. The trial court granted the motion to dismiss and the borrowers appealed. The New Mexico Court of Appeals affirmed, holding:

> [T]he question before us is simply whether Plaintiffs' complaint in this case sets forth compulsory counterclaims that should have been made in response to Defendant's foreclosure complaint in the 2009 case between the parties. If Plaintiffs' complaint sets forth compulsory counterclaims, those claims are barred by Rule 1–013(A) irrespective of res judicata and other principles. The failure of a party to raise a compulsory counterclaim in a prior suit *is fatal* to bringing that claim in a subsequent suit. *Key,* 2008–NMCA–135, ¶ 15. In *Slide–A–Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces,* we held that compulsory counterclaims that were not asserted and litigated in a prior action were deemed abandoned and could not be asserted in a later action. 1987–NMSC–018, ¶ 14, 105 N.M. 433, 733 P.2d 1316.

2013 WL 5309570, at *3.

Plaintiffs' claims against BNYM[9] were compulsory counterclaims in the Foreclosure Action, and therefore are barred. *See Heffern v. First Interstate Bank,* 99 N.M. 531, 660 P.2d 621, 624 (Ct. App. 1983), citing *Torbit v. Griffith,* 37 Colo. App. 460, 550 P.2d 350 (1976) ("allegation of creditor misconduct have been held to be compulsory counterclaims in foreclosure suits"); *Glasgow v. Eagle Pacific Ins. Co.,* 45 F.3d 1401, 1402-03 (10th Cir. 1995) (citing and following *Heffern*). The fact that Plaintiffs did not respond to the MSJ does not change the result. *See Romero,* 2013 WL 5309570, at *4 (penalty of waiver applies even though borrowers filed no response to the foreclosure complaint); *Friedlander v. Cook,* 2008 WL 4820820 (D.N.M. 2008), quoting *Bentz v. Peterson,* 107 N.M. 597, 601, 762 P.2d 259, 263 (Ct. App. 1988) ("Failure to plead a compulsory counterclaim bars a later action on that claim, even if the prior action ended in a default judgment.").

---

[9] Plaintiffs' claims against VMF are discussed in subsection 3 below.

The Court rules that Plaintiffs' claims against BNYM are barred by claim preclusion and/or the bar created by New Mexico Rule 1-013.

    2.    <u>Issue Preclusion</u>. Issue preclusion/collateral estoppel bars re-litigation of an ultimate fact or issue if (1) the party to be estopped was a party (or in privity with a party[10]) to the prior proceeding, (2) the cause of action in the later case is different from the cause of action in the prior case, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation. *Ideal v. Burlington Resources Oil & Gas Co. LP*, 148 N.M. 228, 231, 233 P.3d 362, 365 (2010) (citing *Shovelin v. Cent. N.M. Elec. Coop., Inc.,* 115 N.M. 293, 297, 850 P.2d 996, 1000 (1993)). *See also Deflon v. Sawyers,* 139 N.M. 637, 137 P.3d 577 (2006) (the difference between res judicata and issue preclusion is that issue preclusion does not require that both suits be based on the same cause of action). If any element is not satisfied, issue preclusion does not apply. *Reeves v. Wimberly,* 107 N.M. 231, 233, 755 P.2d 75, 77 (Ct. App. 1988).

Summary judgment, whether or not contested by the party to be estopped, is sufficient to satisfy the "actually litigated" element. In *In re Johnson,* 2007 WL 646376, at *3 (S.D. Tex. 2007), the district court stated:

> An uncontested summary judgment is ordinarily given preclusive effect. *See, e.g., In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) (holding the debtor's active participation in discovery during the 16 months leading up to the creditor's motion for summary judgment, to which no response was filed, warranted application of collateral estoppel); *In re Staggs,* 178 B.R. 767, 775, 777, 780 (Bankr.N.D.Ind.1994) (deeming the "actually litigated" requirement satisfied under Indiana law when a party had a "full and fair *opportunity"* to litigate the issues, and concluding such an opportunity was available to the debtor who filed no response to a motion for summary judgment) (emphasis in original); *In re Wien,* 155 B.R. 479, 486 (Bankr.N.D.Ill.1993) (concluding that "it would be an abuse of the doctrine" not to preclude relitigation of the factual issues when the

---

[10] *See Sundance Mech. & Util. Corp. v. Atlas,* 118 N.M. 250, 254, 880 P.2d 861, 865 (1994) (doctrine applies to those in privity)

-15-

debtor had notice of the summary judgment hearing, was represented by counsel, had an adequate opportunity to participate, and an incentive to do so) . . . .

*See also Arbelaez v. Singleton*, 2013 WL 4532608, at *2 (Ct. App. 2013) (affirming trial court's use of summary judgment as basis for collateral estoppel); *Cordova v. State, Taxation and Revenue, Property Tax Div.,* 136 N.M. 713, 723, 104 P.3d 1104, 1114 (Ct. App. 2004) (use of summary judgment for collateral estoppel is acceptable).

Here, even if Plaintiffs' claims against BNYM were not subject to claim preclusion, the Court rules in the alternative that relitigation of the key fact issues underlying the claims is barred by collateral estoppel. The Foreclosure Judgment contains detailed findings of fact. These findings, which include that (i) Plaintiffs were in default, (ii) BNYM made demand, (iii) Plaintiffs failed to cure the default, and (iv) BNYM consequently exercised its right to accelerate the loan balance and foreclose the Mortgage, preclude Plaintiffs' claims. The state court also found that Plaintiffs "have not alleged any facts or legal theory that constitutes a legal defense to foreclosure of the Mortgage." Plaintiffs could not prevail on any of their claims unless the Court ignored the state court's findings. Collateral estoppel principles prevent this.

   3. <u>Application of Preclusion Principles to Claims against VMF</u>. Claim and issue preclusion bar certain claims against opposing parties in prior litigation and those in privity with them. Determining whether parties are in privity for purposes of preclusion requires a case-by-case analysis. *Deflon v. Sawyers,* 139 N.M. at 640. In *Lowell Staats Min. Co., Inc. v. Philadelphia Elec. Co.,* 878 F.2d 1271 (10th Cir. 1989), the Tenth Circuit discussed privity in the context of res judicata:

> There is no definition of "privity" which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel. Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same. *St.

*Louis Baptist Temple,* 605 F.2d at 1174.

878 F.2d at 1274. *See also Fox v. Maulding,* 112 F.3d 453, 459 (10th Cir. 1997) (claim preclusion can be invoked by bank, which was a named defendant in a prior action, and also by the bank officers, who were not named defendants in the prior action but are in privity with the bank); *Nichols v. Alker,* 126 F. Supp. 679, 682-83 (E.D.N.Y. 1954), aff'd, 231 F.2d 68 (2d Cir. 1956) (claim of fraud and conspiracy against corporation barred later claim against officers, directors, and agents on same theory); *Durhan v. Neopolitan,* 875 F.2d 91, 93-94 (7th Cir. 1989) (agents of sheriff were in privity with sheriff for claim preclusion purposes).

Here, VMF was in privity with BNYM with respect to Plaintiffs' claims. All of the acts Plaintiffs complain about were committed by VMF, as BNYM's servicing agent. Only VMF dealt with Plaintiffs, made collection calls, declared the loan in default, accelerated the amounts due, refused payments, retained foreclosure counsel, and took the other actions described above. BNYM did nothing. Further, Plaintiffs' complaint does not differentiate between the Defendants in the factual allegations or the request for relief—Defendants are lumped together. For the purposes of this litigation, VMF and BNYM are essentially the same. Given all the facts of this matter, it is reasonable to hold that VMF is in privity with BNYM for claim and issue preclusion purposes. Plaintiffs' claims against VMF therefore are barred.

The analysis and result are the same under Rule 13(a) claim preclusion. *See Transamerica v. Aviation Office,* 292 F.3d at 389-93 (holding that the doctrine barring subsequent claims applies not only to the original named plaintiff but also those in privity with it); *Avemco Ins. Co. v. Cessna Aircraft Co.,* 11 F.3d 998 (10th Cir. 1993) (doctrine applied to insurer/subrogee, even though not a named plaintiff in the prior action) *Rohm and Haas Co. v. Brotech Corp.,* 770 F. Supp. 928, 934 (D. Del. 1991) ("Rule 13(a) is not limited in its application

to original parties").

    E.    Did Plaintiffs Prove Claims Based on Defendants' Post-2005 Conduct?

The final question is whether Plaintiffs proved any claims against Defendants based on Defendants' actions after April 4, 2005. The Court concludes that Plaintiffs did not. Plaintiffs' complaint allegations and trial evidence focus almost entirely on VMF's 2004 actions. Plaintiffs made little effort to allege or prove that Defendants' post- April, 2005 conduct was actionable.[11]

The only significant evidence regarding Defendants' post-2005 conduct is that in about April, 2011, Defendants determined that VMF apparently never had sent the Required Cure Notice. Did BNYM have a duty (perhaps under the implied covenant of good faith and fair dealing), upon discovering VNF's 2004 servicing lapses, to compensate Plaintiffs for damages caused thereby? While the argument has some appeal, the Court does not believe it could infer such an obligation without eviscerating the six-year statute of limitations for contract claims. Further, such a rule would create an unhealthy incentive for contracting parties not to review past conduct or preserve records, for fear of uncovering stale breaches that would require remedial action. Ignorance would indeed be bliss. The Court therefore concludes that the discovery by a contracting party of a breach it committed more than six years ago does not create an obligation to compensate the non-breaching party for any damages. Instead, the burden is the non-breaching party to bring a claim for breach of contract within the limitations period.

It should be mentioned, moreover, that it appears BNYM did compensate Plaintiffs to some extent. Shortly after this case was filed, BNYM filed a secured proof of claim for $82,100.79, which included an asserted pre-petition arrearage of $7,744.02. BNYM later agreed

---

[11] The only "bad act" alleged in the Complaint that occurred after 2005 was VMF's failure, at an unspecified time, to "investigate and correct errors." At trial, however, Plaintiffs did not prove that VMF made any significant mistakes in calculating the payment status or loan balance. The focus at trial shifted to VMF's failure to send the Required Cure Notice, refusal to accept payments, loan acceleration, etc.

-18-

to reduce its claim to $63,956, and also to withdraw any claim for pre-petition arrearage. The resulting difference between the original claim and the amended claim is $18,144.79.[12] Furthermore, at trial Defendants acknowledged they would not seek to sell Plaintiffs' house at a foreclosure sale once Plaintiffs complete their plan payments. While Defendants likely will have no choice in the matter (assuming no post-discharge default), it was helpful for Defendants to make clear that, at least in their opinion, the fight is over.

### III. CONCLUSION.

Plaintiffs encountered a series of unfortunate, avoidable procedural problems that caused them to lose all their claims against Defendants. While Plaintiffs' ultimate goal of saving their house has been achieved, Plaintiffs cannot at this late date recover damages beyond what BNYM has conceded.

A separate judgment will be entered in Defendants' favor on all counts.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

---

[12] Plaintiffs argue that when Defendants amended BNYM's proof of claim, they revived Plaintiffs' contract claims against BNYM, and they cite N.M.S.A. § 37-1-16 in support. The Court finds that this argument lacks merit. The contract claims referred to in § 37-1-16 are the type where payments clearly are required, but the payee fails to enforce the contract before the limitations period expired. Here, BNYM did not owe any amounts to Plaintiffs under the Note and Mortgage, so there was nothing to revive. Section 37-1-16 was not intended to deal with a situation like this one, where one party claims that another party breached a non-monetary covenant, causing damages. Further, there is no evidence in the record why Defendants reduced the claim amount. Possibly it was in the (vain) hope that such a reduction to result in a settlement of the long-standing dispute between the parties. Finally, Defendants' actions do not amount to the "making of any partial or installment payment" or "an admission that the debt is unpaid, as well as by a new promise to pay the same." N.M.S.A. § 37-1-16. The language of the claims withdrawal ("the parties are not releasing any further claims or defenses") shows that BNYM did not intend to admit liability or make a new promise to pay. At the most, the claim reduction would be BNYM's admission that its (disputed) liability had been *fully* paid.

Entered on docket: October 4, 2013.

Copy to:

R Trey Arvizu, III
P.O. Box 1479
Las Cruces, NM 88004-1479

Susan P Crawford
150 Washington Ave Suite 220
Santa Fe, NM 87501
Attorney for Defendants